# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE
Assigned on Briefs October 19, 2010

## STATE OF TENNESSEE v. CHRISTOPHER LAWRENCE RODGERS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2008-B-1485, 2008-B-1759      J. Randall Wyatt, Jr., Judge**

_____

### No. M2010-00623-CCA-R3-CD - Filed July 7, 2011

_____

Defendant, Christopher Lawrence Rodgers, appeals the trial court's revocation of his probation sentence. Defendant was originally indicted for one count of domestic assault, three counts of indecent exposure, and four counts of stalking. Defendant entered guilty pleas, pursuant to a negotiated plea agreement, to one count of domestic assault and one count of stalking and was sentenced to serve 11 months and 29 days for each conviction to be served concurrently, and his sentence was suspended on probation. Subsequently, a probation violation warrant was filed, which alleged that Defendant had acted in an abusive and intimidating manner towards his ex-girlfriend by continuing to contact her after she requested that he stop. At the probation revocation hearing, the warrant was amended, with the consent of Defendant, to allege that Defendant violated the conditions of his probation by using intoxicants to excess. Following the hearing the trial court revoked Defendant's probation and entered a judgment placing Defendant's original sentence into effect. We conclude that the evidence does not preponderate against the trial court's finding of a violation, and therefore affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which DAVID H. WELLES and D. KELLY THOMAS, JR., JJ., joined.

Amanda Cox, Nashville, Tennessee, for the appellant, Christopher Lawrence Rodgers.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Robert Homlar, Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

## *Facts*

William Stone, Defendant's probation officer testified at the hearing that Defendant had originally received a sentence of probation for his domestic assault and stalking convictions. While on probation, Defendant was charged with driving under the influence, and his probation was extended for six months as shown by an order in Mr. Stone's file dated October 15, 2009.

Kelly Ann Eubanks testified that she met Defendant through an online dating service over Thanksgiving weekend in 2009. She and Defendant communicated for about two weeks and she met him in person in Atlanta, Georgia on December 11, 2009. They had a relationship that lasted about three weeks after that. She introduced Defendant to her family and children, and Defendant had Christmas dinner with her and her family. She testified that her relationship with Defendant was sexual. She knew Defendant as "Luke," but she testified that the last time she saw Defendant in person, he was showing her an email in which he was referred to as "Chris." Defendant explained to her that "he used to go by that name and then he changed it. And that was a red flag to me."

She testified that Defendant was deaf and that she communicated with him mostly by text messaging, email and Facebook. On January 1, 2010, Ms. Eubanks asked Defendant not to contact her again. She testified, "I tried to break if off cordially, and he just was very persistent." Later that same day and throughout the following night, Defendant sent Ms. Eubanks several text messages. She testified that on January 4, 2010, she received an email at work from an email address called "Deaf Historian Tennessee." The email stated that "the person [she] knew as Luke Rodgers was not Luke Rodgers, he was Christopher Lawrence Rodgers and he had a criminal background; that he was a dangerous man, that he had been convicted for stalking and . . . domestic violence." That night, she received more emails from Defendant, asking "why are you acting like this? Why won't you take my calls? Why won't you respond?"

The following day, Ms. Eubanks told her school system's resource officer, Mr. Harrison, about the emails, and Mr. Harrison filed a police report. That night, Ms. Eubanks received a card and a four-page letter from Defendant, apologizing "for all of the ugly things he said in email. . ." She called Mr. Harrelson, who attempted to contact Defendant, but Defendant did not respond. Ms. Eubanks sent a text message to Defendant asking that he call her. When Defendant called, Mr. Harrelson answered and identified himself as a police officer, and Defendant hung up. It is not clear in the record how Mr. Harrelson vocally communicated on the phone with the deaf Defendant. Mr. Harrelson then sent Defendant

another text message, stating that it was in Defendant's "best interest" to contact him because, he claimed, that he had spoken to Defendant's probation officer. Defendant immediately called back. Mr. Harrelson had a "lengthy" conversation with Defendant. He told Defendant that Ms. Eubanks and her children were frightened and advised Defendant to stop contacting her. He told Defendant that Ms. Eubanks wanted "absolutely no contact with him." Defendant informed Mr. Harrison that Ms. Eubanks was "interested in him" and that he had sent Ms. Eubanks a package. In his letter to her, Defendant said that the package contained sex toys. Defendant also posted photographs of Ms. Eubanks' children on his MySpace web page without her permission. There were also photographs of Defendant consuming alcohol. One photograph of Defendant posted by him is captioned "So drunk at club in Rivergate - June 2009."

At the conclusion of the hearing, the trial court noted that if Ms. Eubanks had brought charges against Defendant for his conduct, the court would find that "unfortunately, [she] got involved in a situation that led to more than [she was] really looking for; and this two-and-a-half-week relationship with the Defendant is one that [she], maybe, need[s] to get over with and forget about . . . and just learn from this." However, the court emphasized the "unusual circumstances" of Defendant's underlying convictions. The court recounted that Defendant had followed two victims in his vehicle, making faces at them, speeding up, backing off and speeding up again, late at night after the victims left work. Defendant had followed one of the victims in her vehicle and masturbated with his windows down. Two weeks later, Defendant followed the two victims after they left work again, at around 3:00 a.m., and they called the police and Defendant was arrested. The court noted that Defendant did not understand "that he couldn't be doing this type of activity and scaring these women half to death, in the middle of the night, chasing them down the interstate here."

The court also noted that Defendant previously violated probation when he was charged with driving under the influence. In that case, Defendant pled guilty to reckless endangerment, and his probation was extended. The court concluded that Defendant's conduct with regard to Ms. Eubanks was a "pattern of activity." Defendant's conduct towards Ms. Eubanks "by itself" might not have supported a probation violation if his underlying conviction was "for shoplifting or something like that." However, "all of the circumstances and the history of this case and the prior violation . . ., all of that combined causes the [c]ourt to believe that this violation warrant should be sustained and this man needs to go and serve the sentence."

In its order revoking Defendant's probation, the trial court found as follows:

> The Court recognizes that the Defendant may have been under emotional duress as a result of having his romantic relationship with Ms. Eubanks

broken off. The Court finds, however, that the Defendant's original charges in this case were very serious and involved multiple instances of following two young ladies from their place of employment and masturbating while driving down the interstate. The Court finds that the Defendant's actions are especially serious given the underlying case that these actions compel the Court to revoke the privilege of probation.

*Analysis*

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. Tenn. Code Ann. §§ 40-35-310, 311. The decision to revoke probation rests within the sound discretion of the trial court. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Revocation of probation and a community corrections sentence is subject to an abuse of discretion standard of review, rather than a *de novo* standard. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). Discretion is abused only if the record contains no substantial evidence to support the conclusion of the trial court that a violation of probation or community correction sentence has occurred. *Id.*; *State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). Proof of a violation need not be established beyond a reasonable doubt, and the evidence need only show that the trial judge exercised a conscientious and intelligent judgment, rather than acting arbitrarily. *Gregory*, 946 S.W.2d at 832; *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).

As a condition of Defendant's probation, he was ordered not to engage in any assaultive, abusive, threatening or intimidating behavior. The record shows that in the days after Ms. Eubanks ended her brief relationship with Defendant, he continued to send her emails and text messages. Ms. Eubanks warned Defendant not to have any further contact with her. Despite her insistence that he stop contacting her, Defendant continued to send emails and text messages. This kind of behavior by Defendant is sufficient to establish that he violated the conditions of his probation. Even if this type of behavior was not sufficient to revoke Defendant's probation, it is clear from the record that Defendant used intoxicants to excess in violation of his conditions of probation. On a social network page, he posted pictures of himself with captions that state: "Having drinks with my buddies - June 2009" and "So drunk at club in Rivergate - June 2009." Ms. Eubanks also testified that on Christmas night when she was dating Defendant, he asked to stay at her home for a while before leaving because "he had consumed too much alcohol." The trial court did not abuse its discretion by revoking Defendant's probation.

**CONCLUSION**

After a thorough review of the record before us, we conclude that the trial court did not err in revoking Defendant's probation and imposing his original sentence to serve.


_____

THOMAS T. WOODALL, JUDGE